23-6876. Your honors, may it please, can you hear me? Yes. Your honors, may it please the court, and if I could reserve three minutes for rebuttal in this case. Okay. Thank you. I represent Dante Walker, who is appealing his convictions for criminal or continuing criminal enterprise. Can the podium be raised a little bit so that you're talking better, getting more? Can somebody raise the podium? I think so, Judge. I think it's raised as high as it can go. It's as high as it goes? Okay. Thank you. Is this better by any chance? Yeah. Thank you, Your Honor. I represent Dante Walker, who's appealing his convictions for engaging in continuing criminal enterprise under 848 of 21 U.S.C., as well as conspiracy and murder charges related to alleged drug, well, he was convicted of alleged drug trafficking activities. And Mr. Walker stands accused of leading what the government portrayed in this case as a major drug operation. And the prosecution went further, attempting to tie my client to tragic overdose of Michael O'Connor in or around 2013, and the murder of Ryan Thurnherr. This was one of the big allegations in this case as well, Your Honor. At its core, just at the outset, I'll say, this is a case built on a lot of speculation, overreach, and assumptions. I will go into the details. Mostly, and I don't use this term loosely, mind reading into the conduct of Dante Walker to reach this number 5, this required statutory number 5 individual so-called supervised for the purpose of getting the continuing criminal enterprise conviction, a remarkably weak prejudicial conviction. There was no dispute as to three individuals, correct? Correct. We are conceding that he supervised or managed, under the law, three individuals. All right. And wasn't there substantial evidence that there were two women who helped bag the heroin into bundles? No, Your Honor. In fact, they didn't identify or bring into this trial any, they were ghosts, basically, for the purposes of this case. What do you mean they were ghosts? What does that mean? There was no one in the trial who they really identified that was involved in bagging operations, as they called it, or the bagging of heroin or drugs on behalf of this individual. It was testimony that involved someone saying, they saw this or this occurred, but it wasn't something where they had any... Because that's not supervising somebody like an employee or supervising somebody like, these are people who... Bagging the heroin for him to sell? They're not covered in the 5? No. He had no opportunity to confront these people. We don't know who they are. If we say it can be anybody that... Is there a requirement that a defendant has the right to confront the individuals involved in the enterprise? There's a requirement that supervision's proved beyond a reasonable doubt. And where we don't have people showing up to court... Wasn't there evidence that the defendant brought, at least one of them brought them vacuum sealed sandwich bags of heroin with instructions to break them down into half bundles? Five or five small bags each? Isn't that part of the evidence? That is part of the evidence. Is it quality evidence? No. Not quality to prove the continuing criminal enterprise statutory requirements. The jury apparently accepted it. The jury accepted it, but I don't know if the jury understood continuing criminal enterprise the way it was instructed in this case. As a lawyer, it is challenging for me to understand this statutory provision. There were three individuals who bought heroin from the defendant and then resold it, and there was substantial evidence that he controlled them. I don't know the evidence that he controlled them. I think these individuals obviously set their own terms as to how they sold this stuff. They didn't give any kickbacks that we necessarily know about to this defendant. There was nothing indicating... Mr. Rosenberg, you've heard these questions. This is a sufficiencies challenge, really, with respect to the five or more. Is that correct? I would say colloquially, yeah, sufficiencies. Okay. I want to be careful with the legal wording. You are challenging the sufficiency of the evidence that your client supervised five or more people. That's 100%. Is that correct? That's 100% correct, Your Honor. And a jury made a determination, and you're saying there's not enough evidence for it to have made that determination that he, in fact, was engaged in a continuing criminal enterprise by supervising five individuals. Is that correct? Correct. All right. That's a very high hurdle. It's a very high hurdle. You've heard, and so the jury could have picked any number of these bits of testimonial and other evidence about what other people were doing for your client. And are you attacking the jury instruction? We do in our brief. But attacking the jury instruction insofar as it described what the jury needed to find to determine supervisory liability? Correct. We are. The jury was given evidence in this case that didn't have the sufficient quality to prove that there were five individuals, let alone four. So this is what I'm getting at because I'm very focused on your words, sufficient quality. What does quality mean? The prosecution has to show that there was a supervisory relationship. Now, this is a gray area if you read the case. I know you've read the case law under the case law. It's a gray area in the sense that you get these opinions that say generally a management or supervisory relationship within the meaning of the statute creates when one person gives orders or directions. We didn't have giving orders or directions shown if we want to go deep into that definition. There was evidence that Walker fronted to drugs. He dictated the price, manner, location, and time when drugs could be sold. He had photos of the sellers. He committed to paying them for their lawyers if they promised to plead guilty. All of that was in the record. As to three of the individuals, it was directly evidence that was shown beyond. We only need two of them. In this particular case, it's manifestly unjust if he goes to prison for life on this kind of case where they tie this in and prejudicially with murders that they didn't even get close to showing that he was even involved with, let alone was even around at the time of any kind of incident where people dropped dead over the course of ten years. So now you're moving to manifest injustice? Of course. We make that argument, too. We're going at every angle we can because he's spending a life sentence on the drug kingpin statutory based on the prosecutor merely having people say, according to their testimony, that, well, we know him to be doing this. We thought he was doing this. If the jury believed these witnesses, why wouldn't that be enough? That is, what you're making, I think what you're really doing is asking us to reconsider the credibility of these witnesses. No, Your Honor. I think the instructions also. Plain error. We argue this. We're not proper for the jury to understand what they were doing in this case. We also argue very, I think, credibly throughout our brief, there were issues with the way they tied in. If you look at the chronology of the 3,000-page-plus trial, they went right into this overdose, like, murder allegation, and they then did, like, a second series on, okay, let's find more people involved with this individual. But they didn't prove supervisory role. They didn't get the actual supervisory beyond three people. As to actual evidence beyond a person saying they saw something. There was no ability to confront any of these people. Someone could go before a jury and say, you know what, there's a bunch of people involved. We know a bunch of people, and therefore, that's more than five. It was a way to get to the number five, but there wasn't evidence showing more than three. It's a big deal, this statutory request. It's the highest level drug offense. No, no, I appreciate that. It's the highest level. We're not saying review what the jury did again, necessarily. The court can do that. We're saying it was an abuse of discretion. There were many prejudicial errors. Our brief argues really a totality of the prejudice case. And if we look at the way other evidence was presented in the case, there was a lot of code interpretation. There was no authentication of phones. It was a case where there was identification of vehicles where no one actually was an expert or knew what a vehicle looked like based on their identification. It was a case where they were able to prejudice the jury into a belief that was not based on the law. And the trial was poorly conducted. I think we appreciate that very much. You have reserved three minutes for rebuttal. Thank you, Judge. So we'll hear from the government, and then we'll have to hear from you. And if I could just say, we rest on our briefs otherwise, apart from rebuttal. Of course. We make quite a few arguments in our brief. Thank you very much. Counsel? You want to lower that? I kind of do. A little sound check. Are we okay? Thank you. May it please the court, Monica Richards. I represent the United States of America on this appeal. With regard to the CCE count, which is count one in the indictment. Again, my opponent has conceded three of those matters, three of those elements. But the facts that are raised in the brief relate to the conspiracy, the allegation the conspiracy did not continue into 2018, that he supervised five or more individuals, and that there was substantial income. The substantial income is easily disposed of. We had half a million dollars discussed by one witness, Nicholas Pearl. We had Mr. Williams, who testified to seeing the defendant count $800,000 on one day. Same thing with regard to the fact that the conspiracy continued into 2018 and beyond. We had texts between the defendant and Ryan Turnhur, and that Walker was going to supply him. And then we also had Turnhur's death. The execution of the search warrant at Walker's apartment. There was money. There was a money counter. There was drug trafficking, paraphernalia, and then not to mention that there were guns in the locker. So with regard to count one, that leads us to the discussion that was held just a moment ago regarding organizer or manager. And as the court noted, we had three conceded persons, and then we also had, as Judge Chin noted, the two baggers most notably were people who Mr. Walker organized, managed, or supervised. We heard a lot about supervised, but that doesn't mean that he has to be on the site supervising a grant. We didn't have that sort of testimony, but organized or managed in terms of having dropped off, I mean, we're talking about kilogram quantities to the homes of these baggers, and somebody who does that would be in a position of trust. I mean, that person is organizing, managing, or supervising, I think, as most clear as to the two baggers. Again, that trial transcript. Let me ask you about that. I'm looking at the evidence on page 1411. This evidence on page 1411 says the witness is asked, to your knowledge, what would these women do based on your knowledge of the defendant's operation? Answer, they bag up the heroin. Question, now explain to the jury now what do you mean by bagging up the heroin? She says, once it's broken down to the grams he give them, to the grams to the women, they start bagging it up to the five to the half bundles that equals one ten bags. Now, as far as that evidence is concerned, it seems to me that this witness tells what the women do with the bags, but where's the evidence that the defendant instructed them what to do with the bags? I mean, supposing, as a hypothetical, supposing you have an operation, people who are processors, whether it's an illegal trade like drugs, or whether it's a legal trade like making handbags. There's a shop that specializes in doing something, and we bring our handbags to these people, and what do they do? Oh, they stitch up a certain part of the handbag, then they give them back to us. Is that supervision, or is that just bringing somebody to an outfit that has a specialty? They do certain things, and we pay them to stitch up our handbags in a certain way. They give them back to us. In this case, they bring the drugs, and those people put them in bags. Where's the evidence? Supervision, it seems to me, envisions that the person in question, the defendant, is giving orders or instructions and telling them what they're supposed to do. Where is that? Where is that evidence? I appreciate the fact that there isn't. We do not have somebody who said, I told these women, or the women saying, I was told by defendant. Right, we don't have either of those people testifying. Why does the simple fact that the women perform a service mean that they are supervised? And again, I appreciate the use of the word supervised is, in fact, one of those ways. Is supervised the only? I've forgotten. Does 848 have other verbs, other alternative verbs? Supervised the only verb in 848? No, Your Honor. It's also managed or organized, and the trial transcript at page 2693 is where the jury instruction was on that. And the jury instruction on that instructs the jurors to give those words their plain and ordinary meaning. Say that again. What are the words again? Supervised or what? Organizer. In considering whether the defendant occupied such a position, you should give the words organizer, supervisor, or manager. Not really the verbs, but rather the nouns. Organizer, supervisor, or manager, their ordinary, everyday meaning. So why does the evidence that I just referred to on page 1411, why does it satisfy supervisor, supervised, organized, or managed? Because if we back up, Your Honor, to 1409 in the transcript, we have the description of what happened. When the kilogram quantities came into the area, what happened with those kilogram quantities? We would weigh it, break it down, separate different, separate, I'm sorry, put it in separate different bags, vacuum seal it, and then be on your way. So, you know, on for sale, ready for sale. And the question is asked after the defendant, after Mr. Walker weighed the heroin, it was broken into Ziploc bags, what would happen next? We'd take it, he'd take it to different locations, spread it to two different girls who would bag it up. So we have a little more clarification as to what the process was. Again, by Mr. Williams, who was intimately involved in this thing. So we have him testifying. You'd say he would bring it to these two women. You put it in sandwich, I'm sorry, backing up on 1410. You put it, you put the sandwich bags into the vacuum sealed bags. Yes. You vacuum seal it, and that's what he would bring to them, to the two women that you just mentioned. Answer, yes. Did you ever go with him to deliver to these two women? Yes. So it's all in there, Your Honor. The fact that he organized, managed. If we want to be picky about supervised, I might slide a little on supervised. But organized, managed is absolutely in there. And I'm not fully sliding on supervised. What it doesn't require is a specific instruction from the defendant to the people who he is supervising. So, for example, if I supervise a, I can be the manager of a supermarket, and I don't have to have a specific instruction to the person who's putting items on the shelf, I'm still the manager of that supermarket. Is that the analogy? Thank you. And people hate a micromanager. I mean, that's sort of the point here. We had somebody who was organizing and managing. He wasn't standing over them, telling them what to do, how to do. And, again, obviously we didn't have the testimony from those people who were giving and receiving the instruction. Is there a case, a Second Circuit case, that would help us determine that your interpretation of manager or organizer is the right one? A Second Circuit case. I definitely have the instruction that was given, ordinary and plain meeting. It was a part of the jury instructions. And then, with regard to the specific question, I guess I'm just looking at the normal case law with regard to, I've never seen that being diced down any more, or drilled into more specifically. If the court wants to give me an opportunity to take a look, I'd be happy to do that. Your answer is you're not aware of a Second Circuit precedent that helps us with that, and you're relying on the ordinary plain meeting of those terms, those three terms, manager, organizer, or supervisor. Is that correct? I'm trying to take one more second to look at my brief to make sure I didn't cite something, but I'm sure that if the court's asking me the question, it's not in there. Well, I suppose there's an inevitable inference, isn't there, that the person who brings the sealed vacuum bags with a quantity of drugs in it to these women, and then the women process them, meaning in the sense of breaking them down into individual bundles, it seems to me at least arguable that there's an inevitable inference that they were told what size bundles, how to break them down, that it wasn't just up to them to do anything they wanted, package them in any way they wanted, in any quantities they wanted, and then return them. Are you relying on an inference that the women must have been told what size bundles, what weight bundles the drug dealers wanted returned to them? That was well put, Your Honor. Thank you. Yes, but also I would refer at page 23 of my brief, I do get to the Sixth Circuit case, and if that's what Your Honor was angling towards, we do cite a Sixth Circuit case, United States v. Patrick, following after United States v. Roman, which we cite generally for the supervisor. So U.S. v. Roman is a general case, but you're relying on a Sixth Circuit case for the more specific definitions? Yes. And with regard to, I mean, just following that through then, there were other people, as were discussed previously by Judge Chinn, that the other people involved in this case included Ashley Samson, Andrea Balzer, and Nicholas Pearl, let alone Mr. Gonneau, whose legal fees were paid for by Mr. Williams. All of those things, this Court has found, excuse me, my time's up. If I can continue. Of course. All of those things, the people who were engaged in the next downstream set there, were all people who were different, who were also people who he managed, organized, or led. If I could, just because I know my colleague has reserved. Let me first ask you something further.  The testimony we were just talking about on pages 1409, 10, and 11, that concerns Abdul Furkan. Does it concern another bagger woman as well, in addition to Abdul Furkan, or is that only her? She's the only named bagger that we have. We have an unnamed bagger. Who was part of that group together with Furkan? Yes, they were the two. So you're relying for that evidence on 1409 to 1411. That covers Furkan and another unnamed bagger? Yes, Your Honor. Now how about Samson? Is Samson one of the ones that you need to add to, I mean, need to add if you didn't have those two? If you didn't have, Furkan and the unnamed person complete the number that you need, right? Five?  So what's the evidence for Samson? Judge, thank you, Your Honor. Samson was the person who actually, in the Rule 29 opinion, that my – Samson's the one in the Rule 29 opinion who the judge there found – actually, she didn't think much of the baggers, but she did think of the Rule 29. She focused on Ashley Samson, who was somebody who only sold Mr. Walker's heroin, somebody who took direction from him, followed his rules in terms of the timeframe set in the day. He would short her if she didn't pay the right amount to him. He told her that if somebody didn't like his drugs, his narcotics, to tell them to go somewhere else, he was providing that direction, management, and control to her. So he was another person who could supply, who could go from three to, well, one or two more up to five? Ashley Samson would, yes. And similarly, then, those same arguments apply to Andrea Balzer and Nick Pearl. They were also people who were just in that next immediate downstream step from Mr. Walker. My opponents reserved three minutes for rebuttal, and the only thing we talked about was the CCE and the five supervisory efforts here. I would just briefly touch on the count two, where the narcotics conspiracy resulting in death. We did hear a little bit about that. But the argument that was made really here is just that it wasn't the but-for causation. He doesn't deny that he was involved in the narcotics sales to Mr. O'Connor or that Mr. O'Connor's death happened at all. But he then says, he argues about the but-for causation. And again here, that's a credibility determination that was made by this jury with regard to the testimony of the medical examiners who testified and also defense put on their own witness, the toxicologist. The jury here was well instructed on that. There's no challenge to the jury instruction and heard the evidence and made their credibility finding. With regard to count three, similarly, there's no dispute that he was involved in the death of Mr. Thernhart. He doesn't dispute that. The only thing he disputes is that the killing occurred because of engaging in the CCE or the drug conspiracy. Again, setting that scene, law enforcement was closing in. This was October 2018 when this happened. Mr. Williams had been arrested. There had been all sorts of communications about Thernhart helping with a federal case. We had surveillance information. We had surveillance videos showing a black Tahoe that Thernhart was known to use in the area. We had the fact that there was fake cocaine. This whole thing was a setup altogether. And that fake cocaine had Mr. Walker's DNA on it. The fact that when Walker was arrested, he made incriminating statements. He asked questions about whether he was going to be charged with a body. All of those things, I submit, go towards countering the argument that he was not, that the death didn't occur because of or engaging in the CCE. Any other questions? Thank you very much. Thank you. Mr. Rosenberg. Your Honors, I'll just grab at this very fast. We do dispute that it was more than but for causation as to O'Connor. We do dispute, obviously, that because they never provided evidence, we don't have to dispute it. They didn't provide evidence that any drugs were supplied to O'Connor that led to the cause of his death. They brought a coroner from the county initially who testified that their findings was a coronary cause. He had a heart condition. And that was the primary cause of death and not drugs. There was evidence that the O'Connor texted Walker asking for heroin. There was evidence that heroin, that Walker brought him heroin that day. Not the cause. Not the cause. Right. Your Honor, he didn't die, we're saying, of an overdose. Well, he had a medical examiner saying he died of an acute heroin intoxication. The newest one. Ten years later, the feds go up to a medical examiner, basically, and say, would you reassess this case? So initially it was a coroner? Well, excuse me, initially a medical examiner, to use proper terminology, said that this was not the cause of death. So what's wrong with that? They go up to him ten years later and they say, would you please reexamine this case? What's wrong with that? Because if the feds go up to somebody and say, will you reassess this case? When it's already had a final conclusion as to the cause of death. You have an argument for the jury. You have an argument to the jury that this was not good evidence. The jury should disregard it, but they were persuaded by it. I'll rest on my brief on this. I need to touch on just a few other things if I could, Your Honors, that are so important. We also do dispute as to Thurnherr the fact that he was involved. We don't say in our brief he was involved. We ask the court to read this. It's a long transcript, but carefully. The evidence doesn't show involvement. And we're not responding if they don't provide the evidence in the case. So if our brief doesn't say, oh, he was not involved, it doesn't mean we're admitting he was involved just because we don't say he's not involved. So I dispute what's said there. We're not conceding anything on those points. I just had to take that moment. As to this ---- What's the point you're making when you say he wasn't involved? My opposing counsel said that we were not disputing my client was involved in the death of these people. That's not a thing we said in our briefs. I repeat my question. What follows? If we're persuaded by you that there was inadequate evidence that he was involved, what happens? Where do we go from there? It implies a concession that he's involved in someone's death in the case. Do I need to ask it a third time? I think legally, yeah. What legal conclusion that's helpful to your client would follow from our agreeing with you and say, oh, yes, there was inadequate evidence that he was involved. So what? That supports what? It supports conspiracy involved with narcotics trafficking allegations. The whole thing comes together as these things were caused in the course of trafficking drugs is the allegation. Are you saying that the conspiracy evidence against the defendant depends on whether Thernherr was involved in the conspiracy? Well, for the jury, I think it was significant there was a loss of life in the case. It had to have been significant. What's confusing is the jury acquitted him on a firearms charge. So we don't know really what the jury thought as to. Yeah, but would the result be different if Thernherr had been killed as a customer using this narcotics and not involved in the conspiracy? Most certainly for a jury, yeah. No, I'm talking about as a legal matter. I'm not talking about whether the jury would find it more persuasive or less persuasive. Explain it to me. If we take away the death of somebody, it's not in the indictment. Why does it take away the death if he was killed by the drugs? Well, we don't know if he was killed by the specific drugs that they're alleging were supplied by this individual. They don't make that link. This is also important as to the other individuals. They're saying these people who were drug dealers were supervised. Ashley Sampson, Andrea Balzer, Nicholas Pearl. The court case that this court should look at is United States v. Losada from 1982 Second Circuit, 674 F2D 167, which recognized simply selling to others does not transform a seller into a supervisor. And it certainly doesn't build a case for CCE conviction. If these people were getting their own profits, setting their own prices, people who are associated can talk about, you know what, this is not the right amount. Or you owe me money, I sold you things. But the evidence, as I understand it, wasn't just about fronting or selling to others. It was about doing specific things that went well beyond just selling. I'm your customer. There was the bagging. There is, and you heard the different analogies to managerial or supervisory relationships. What am I missing? That they're saying other people, too, in addition to this unnamed bagger who we don't know. I don't think you can make an inference that because a person's bagging, they could be a family member. We don't know if there's a relationship where a person's just in a household. A lot of people in this do illegal activities in a household, and they're just involved because they're making money. Or they want their own benefit. It doesn't mean there's a supervisor or an organized operation in that sense by my client, by him as an organizer. You have that argument well in line. Is there anything else? I'll just add. Ashley, Samson, Bowser, Pearl, Gano, these individuals, there's no evidence in the record that there was anything more than their own self-interest in selling or being addicts with drugs. There was no evidence that he was organizing them or they responded to orders of my client. That's very important because they try to reach five on this. They can only reach three. I think in most commercial legal context, self-interest goes all the way around. That doesn't extinguish the managerial or manager-supervisor relationship. But I appreciate your argument. We will reserve a decision.